This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**CITY OF PORTALES, a municipal corporation existing under the laws of the STATE OF NEW MEXICO,**

Plaintiff-Appellee/Cross-Appellant,

v.                                                    NO. 32,375

**VYANCA VEGA,**

Defendant-Appellant/Cross-Appellee.

**APPEAL FROM THE DISTRICT COURT OF ROOSEVELT COUNTY**
**Drew D. Tatum, District Judge**

Doerr & Knudson, P.A.
Steve Doerr
Randy Knudson
Portales, NM

for Appellee/Cross-Appellant

Eric D. Dixon, Attorney and Counselor at Law, P.A.
Eric D. Dixon
Portales, NM

for Appellant/Cross-Appellee

## MEMORANDUM OPINION

**VANZI, Judge.**

{1}     The City of Portales (the City) filed suit against Vyanca Vega, a former police officer with the Portales Police Department (the police department), after Vega failed to reimburse the police department for the costs and expenses it incurred related to Vega's initial training to become a police officer. In the proceedings below, the district court entered summary judgment in favor of the City. Vega appeals the district court's grant of summary judgment in favor of the City. The City cross-appeals the denial of attorney fees and costs related to the proceedings in district court. We affirm the district court's grant of summary judgment in favor of the City. However, we reverse and remand for further proceedings on the issue of attorney fees and costs.

**BACKGROUND**

{2}     Vega commenced employment with the police department in April 2010 and voluntarily resigned from her position as a police officer approximately fifteen months later. Upon her resignation, the City notified Vega that she owed $3,102.61 under the terms of a written agreement (the Reimbursement Agreement) that Vega had entered into with the police department at the start of her employment. Under the terms of the Reimbursement Agreement, Vega agreed to reimburse the police department for "all costs and expenses related to [her] initial training and uniforms required to become a [p]olice [o]fficer" if she voluntarily resigned from the police department within twenty-four months after her training was successfully completed. The Reimbursement Agreement contained the following provisions of relevance here:

2.   I agree that if I should voluntarily resign employment with the . . . [p]olice [d]epartment during that 24 months, I will repay 100% of the initial costs incurred by the . . . [p]olice [d]epartment. These costs may include tuition, fees, books, lodging, meals, uniforms, medical examinations, psychological testing, and any other valid expenses incurred by the . . . [p]olice [d]epartment.

. . . .

5.   I agree that if it becomes necessary to enforce this contract and judgment is entered against me, I will pay all costs and expenses incurred by the . . . [p]olice [d]epartment and/or the City . . . , including attorney fees and court costs.

The written notice to Vega of her breach of the Reimbursement Agreement included an itemized list of the expenses that the police department had incurred related to her basic training to become a police officer, with specific costs listed for exams and training at the police academy, academy uniforms, and equipment. Vega refuted that she owed the amount requested by the City, and the City proceeded to file suit in magistrate court to recover the money allegedly due under the Reimbursement Agreement. The magistrate court found in favor of the City and awarded $3,102.61 in damages plus $930.51 in attorney fees and costs.

{3}   Vega appealed the magistrate court judgment to the district court. Vega filed a motion for summary judgment in which she raised four arguments challenging the validity of the Reimbursement Agreement. First, she argued that the Reimbursement Agreement was null and void because it was not approved by the city manager or the city council. Second, she argued that the Reimbursement Agreement failed for lack

3

of consideration because she was hired on April 1, 2010, and was not presented with the Reimbursement Agreement until days later on April 7, 2010. Third, she argued that the Reimbursement Agreement failed because it contained ambiguous terms. Lastly, Vega argued that she should not have to reimburse the City for property that she had already returned pursuant to written police department policies. In its response to Vega's motion for summary judgment, the City argued that: (1) the Reimbursement Agreement was approved by the city manager; (2) the consideration for the Reimbursement Agreement was Vega's employment as a police officer and the payment of wages; (3) the Reimbursement Agreement was not ambiguous; and (4) Vega was not entitled to an offset for the equipment she returned to the police department because the Reimbursement Agreement did not provide for it.

{4}     In addition, the City filed a countermotion for summary judgment seeking to enforce the Reimbursement Agreement. The City argued that the Reimbursement Agreement was unambiguous as a matter of law and, therefore, the district court could enforce its terms and enter judgment against Vega. In response to the City's countermotion, Vega argued that the Reimbursement Agreement was ambiguous and that the City had failed to present evidence in support of the countermotion.

{5}     The district court held a hearing on both parties' motions for summary judgment. The court later entered a letter decision in which it denied Vega's motion for summary judgment and granted the City's countermotion.

4

**DISCUSSION**

{6}     Vega appeals the district court's grant of summary judgment in favor of the City. In the cross-appeal, the City appeals the district court's denial of its request for attorney fees and costs incurred in the district court proceedings. We address the arguments raised in each appeal in turn. "Summary judgment is appropriate where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law." *Self v. United Parcel Serv., Inc.*, 1998-NMSC-046, ¶ 6, 126 N.M. 396, 970 P.2d 582. Because this is a question of law, we apply de novo review. *Id.* "We view the pleadings, affidavits, and depositions presented for and against a motion for summary judgment in a light most favorable to the nonmoving party." *Deaton v. Gutierrez*, 2004-NMCA-043, ¶ 12, 135 N.M. 423, 89 P.3d 672.

**A.     Vega's Appeal**

**Whether the Reimbursement Agreement Was Supported by Consideration**

{7}     Vega argues that summary judgment was improperly granted in favor of the City because the Reimbursement Agreement is invalid due to a lack of consideration. Vega claims that she began her employment on April 1, 2010, the date that she signed a letter of understanding of conditional employment with the police department, and that the Reimbursement Agreement was not entered into until April 7, 2010. Vega contends that since she was already an at-will employee of the police department on the date that she signed the Reimbursement Agreement, the only consideration for the

5

Reimbursement Agreement was her continued at-will employment with the police department. She argues that a promise of continued employment cannot form adequate consideration for the Reimbursement Agreement as a matter of law.

{8}     It is well established that for a contract to be legally valid and enforceable, it "must be factually supported by an offer, an acceptance, consideration, and mutual assent." *Garcia v. Middle Rio Grande Conservancy Dist.*, 1996-NMSC-029, ¶ 9, 121 N.M. 728, 918 P.2d 7 (internal quotation marks and citation omitted). "Consideration consists of a promise to do something that a party is under no legal obligation to do or to forbear from doing something he has a legal right to do." *Heye v. Am. Golf Corp.*, 2003-NMCA-138, ¶ 12, 134 N.M. 558, 80 P.3d 495. Consideration must be "bargained for by the parties. Something is bargained for if it is sought by the promisor in exchange for his promise and is given by the promisee in exchange for that promise." *Romero v. Earl*, 1991-NMSC-042, ¶ 6, 111 N.M. 789, 810 P.2d 808 (internal quotation marks and citations omitted)).

{9}     We are not persuaded by Vega's argument that the only consideration for the Reimbursement Agreement came in the form of her continued employment with the police department. Even if we assume without deciding that Vega was already an at-will employee of the police department on the date that she signed the Reimbursement Agreement, we nevertheless conclude that there was independent consideration for the Reimbursement Agreement. Specifically, under the terms of the Reimbursement

Agreement, Vega promised to remain employed with the police department for a period of twenty-four months in exchange for the benefit of receiving training at no cost to her at the New Mexico Law Enforcement Training Academy and for having all other costs and expenses associated with her becoming a police officer paid for by the police department. In turn, the police department promised to pay for the costs of training and other expenses in exchange for the benefit of obtaining a two-year service commitment from Vega. Prior to entering into the Reimbursement Agreement, neither party had any pre-existing obligation to undertake any of the foregoing actions. Thus, because both parties essentially bargained for and promised to take actions that they were under no legal obligation to do, we conclude that there was adequate consideration to support the Reimbursement Agreement. *Cf. Smith v. Vill. of Ruidoso*, 1999-NMCA-151, ¶¶ 5, 34, 128 N.M. 470, 994 P.2d 50 (holding that a police chief's promise that the village would pay medical expenses for the plaintiff's minor daughter was not supported by consideration because the village "neither sought nor received anything from [the p]laintiff in return for its promise to pay [the] medical bills").

**Validity of the Reimbursement Agreement Due to the City Manager's Alleged Failure to Approve the Reimbursement Agreement**

{10}     Vega next contends that the Reimbursement Agreement is invalid because there is no evidence indicating that the Reimbursement Agreement was approved by the city manager prior to its implementation. The City does not challenge Vega's position that

7

approval by the city manager was required prior to implementation based on the City's written policies and procedures.

{11} In both her summary judgment motion as well as her response to the City's countermotion for summary judgment, Vega argued that the Reimbursement Agreement was invalid because it was not approved by the city manager. In support of this assertion, Vega submitted answers to interrogatories provided by the police department chief, in which the chief stated that he "ha[d] no personal knowledge" of the "date the [Reimbursement Agreement] was presented to and approved by the Portales [c]ity [m]anager." The City responded to Vega's argument by submitting two affidavits from Tom Howell, the city manager. In both affidavits, Howell stated that he approved the use of the Reimbursement Agreement, that the approval was given before any prospective candidate for employment with the police department was presented with the Reimbursement Agreement, and that the approval occurred in the early months of 2010 and well in advance of the date that Vega signed the Reimbursement Agreement.

{12} Despite the content of the two Howell affidavits, Vega continues to argue on appeal that "[t]here is no evidence that the [Reimbursement] Agreement was approved by the [c]ity [m]anager." She contends that the Howell affidavits are deficient because no exact date was given for the approval of the Reimbursement Agreement, and she states that the approval could very well have occurred after April 7, 2010, the date that

8

Vega signed the Reimbursement Agreement. Finally, she asserts that there is a contradiction between the police chief's answer in the interrogatories and the content of Howell's affidavits because the police chief stated that he had no personal knowledge of the date the Reimbursement Agreement was approved. Vega contends that the contradiction gives rise to a genuine issue of material fact that forecloses the possibility of granting summary judgment in this case.

{13}    We disagree with Vega's arguments. The two affidavits provided by Howell were based on his personal knowledge. As such, it was not erroneous for the district court to draw an inference from the content of these affidavits that the Reimbursement Agreement was approved prior to its implementation by the police department. Vega's argument on appeal that the approval could very well have occurred after April 7, 2010, is mere speculation and does not give rise to a material issue of fact. *See Duran v. N.M. Monitored Treatment Program*, 2000-NMCA-023, ¶ 28, 128 N.M. 659, 996 P.2d 922 ("The presence of a material issue of fact cannot be based on speculation."). Notably, Vega fails to point to any evidence in the record to rebut Howell's statement in the affidavits that he gave the approval in the early months of 2010 and well before the date that Vega signed the Reimbursement Agreement. Although she relies on the police chief's interrogatory answers as support for her position, we disagree with Vega that the police chief's answers contradict Howell's statement in the affidavits that he approved the use of the Reimbursement Agreement. The police chief's answer

that he had no personal knowledge of the date of approval simply does not contradict Howell's statements in the affidavits concerning approval of the Reimbursement Agreement. We therefore affirm on this issue.

**Whether the Reimbursement Agreement Is Ambiguous**

{14}     Next, Vega contends that the Reimbursement Agreement is ambiguous because it is susceptible to different constructions. She argues that while the Reimbursement Agreement provides that voluntary resignation prior to twenty-four months requires repayment of "100% of the initial costs incurred by the . . . [p]olice [d]epartment[,]" the Reimbursement Agreement fails to specify exactly what the initial costs would include. Vega argues that the Agreement fails to indicate "who decides what these costs are[,] . . . when these 'initial costs' are to be determined[,] and when these costs are to be paid." Whether contractual terms are ambiguous is a question of law subject to de novo review. *Envtl. Control, Inc. v. City of Santa Fe*, 2002-NMCA-003, ¶ 14, 131 N.M. 450, 38 P.3d 891.

{15}     As we understand her argument, Vega appears to argue that the term "initial costs" in the Reimbursement Agreement is ambiguous and susceptible to different constructions. However, Vega fails to elaborate on this argument and ultimately fails to explain why the term "initial costs" is susceptible to different constructions. She also does not point to any evidence that she presented during the proceedings below to support her contention that the term "initial costs" is unclear or ambiguous. *C.R.*

10

*Anthony Co. v. Loretto Mall Partners*, 1991-NMSC-070, ¶ 15, 112 N.M. 504, 817 P.2d 238 ("[I]n determining whether a term or expression to which the parties have agreed is unclear, a court may hear evidence of the circumstances surrounding the making of the contract and of any relevant usage of trade, course of dealing, and course of performance." (footnote omitted)). And while she argues that the parties attached materially different meanings to the term "initial costs," she again does not explain what these different meanings were. Ultimately, like many of the other arguments she raises in this appeal, Vega's contention that the Reimbursement Agreement is ambiguous is raised in the briefest of manners, offering little in the way of a principled or developed analysis. This argument, like the others raised in her briefing, is supported by little more than broad legal statements from cases that are not analogous or otherwise applicable to the facts of this case. Undeveloped arguments place this Court in the unnecessary position of having to guess at what a party's argument may be and often preclude meaningful review. *See Headley v. Morgan Mgmt. Corp.*, 2005-NMCA-045, ¶ 15, 137 N.M. 339, 110 P.3d 1076 (explaining that the appellate court does not review unclear or undeveloped arguments).

**{16}** As to the merits of Vega's argument, the language of the Reimbursement Agreement leads us to conclude that the term "initial costs" is not ambiguous. The Reimbursement Agreement begins by stating that reimbursement is required "for *all* costs and expenses related to [Vega's] initial training and uniforms required to

11

become a [p]olice [o]fficer." (Emphasis added.) It also states that "100% of the initial costs incurred by" the police department must be repaid if the two-year service commitment is not met. And significantly, the Reimbursement Agreement expressly goes on to indicate that the costs "may include tuition, fees, books, lodging, meals, uniforms, medical examinations, psychological testing, and any other valid expenses incurred by the . . . [p]olice [d]epartment." In the absence of any evidence indicating otherwise, we conclude that the term "initial costs" is unambiguous.

**Alleged Charges for Property Vega Returned at the End of Her Employment**

{17}     Vega contends that the City improperly charged her for police department-issued equipment that she returned to the police department at the end of her employment. Vega claims that she returned this equipment pursuant to an internal police department policy. We decline to consider Vega's argument for a number of reasons. Vega fails to cite to any authority in support of her argument. This Court will not consider arguments that are unsupported by citation to authority. *See ITT Educ. Servs., Inc. v. Taxation & Revenue Dep't*, 1998-NMCA-078, ¶ 10, 125 N.M. 244, 959 P.2d 969. Vega also does not explain why, under the terms of the Reimbursement Agreement, she should not be charged for equipment that was allegedly returned to the police department. Nor does Vega explain why the police department's written policies should apply in lieu of the terms of the Reimbursement Agreement. She also does not point to any principle of contract law that would support her argument that

the Reimbursement Agreement should not apply to the equipment that was returned. In other words, as compelling as Vega's argument may be, we are not provided with any basis, either under contract principles or under the language of the Reimbursement Agreement, upon which to assess the merits of her argument. Coupled with Vega's failure to cite to any authority in support of her argument, we are unable to consider the argument.

**Denial of Vega's Motion to Strike Affidavits**

{18}     Vega argues that the district court improperly denied her motion to strike two affidavits that were attached to the reply memorandum filed by the City on its countermotion for summary judgment. The City's reply memorandum included the affidavit of Cathy Kennedy, a payroll specialist for the City, and a second affidavit provided by Tom Howell, the city manager for the City. Vega raises three arguments on appeal as to why these two affidavits should have been stricken. She first argues that Rule 1-056(D)(2) NMRA does not permit a party to submit new evidence in the form of affidavits in a reply memorandum. We disagree that Rule 1-056(D)(2), or any other portion of Rule 1-056 for that matter, includes such a limitation. Rule 1-056(D)(2) concerns filing deadlines for memorandums related to motions for summary judgment, providing in relevant part that "[t]he moving party may, within fifteen (15) days after the service of [a] memorandum [in opposition to the motion for summary judgment], submit a written reply memorandum." Contrary to Vega's

13

assertion, Rule 1-056(D)(2) does not state that affidavits may not be attached to a reply memorandum.

{19} Vega's remaining two arguments are equally unavailing. Vega argues that the affidavit of Cathy Kennedy should have been stricken because the City failed to name Kennedy as a witness in earlier answers to interrogatories. However, Vega fails to cite to any authority, either in the language of Rule 1-056 or in New Mexico case law, that provides that affidavits in the context of summary judgment proceedings can only be provided by individuals previously named as trial witnesses. This Court will not consider propositions that are unsupported by citation to authority. *ITT Educ. Servs.*, 1998-NMCA-078, ¶ 10; *see also In re Adoption of Doe*, 1984-NMSC-024, ¶ 2, 100 N.M. 764, 676 P.2d 1329 (stating that when a party cites no authority to support an argument, we may assume that no such authority exists). And lastly, Vega claims that the second affidavit of Tom Howell should have been stricken because it did not clarify the date the City approved the police department's use of reimbursement agreements for new hires. However, we conclude that Vega's argument that the affidavit was vague is not a basis for striking the affidavit. Vega has not argued that Howell's second affidavit failed to meet the requirements of Rule 1-056(E) or was otherwise in improper form. *See* Rule 1-056(E) (stating that affidavits "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters

14

stated therein"). Thus, the district court acted within its discretion in considering Howell's second affidavit and was permitted to give the information provided therein as much or as little consideration as it deemed necessary based on Vega's argument below that the affidavit failed to adequately clarify the date of approval. We affirm the district court's denial of Vega's motion to strike the two affidavits attached to the City's reply memorandum.

{20}     Remaining unpersuaded by Vega's arguments on appeal, we affirm the district court's grant of summary judgment in favor of the City.

**B.     The City's Cross-Appeal**

{21}     The City appeals the district court's failure to award the City attorney fees and costs associated with the proceedings in district court. "We review a ruling denying attorney fees for abuse of discretion." *Bustos v. Bustos*, 2000-NMCA-040, ¶ 24, 128 N.M. 842, 999 P.2d 1074.

{22}     Before we address the arguments raised by the City, we first consider two procedural matters raised by Vega in her answer brief. First, Vega argues that we should not consider the City's cross-appeal because the City's brief in chief in the cross-appeal was not timely filed. Our Rules of Appellate Procedure provide that an "appellee's answer brief and brief in chief on cross-appeal shall be filed simultaneously as separate documents." *See* Rule 12-213(I) NMRA. In this case, on the Court's own motion, the City was given an extension of time to file its answer

15

brief in Vega's appeal. Because the motion did not mention the brief in chief in the cross-appeal, Vega contends that no extension of time was given for filing this pleading and that therefore, it was untimely filed. We disagree. Under the language of Rule 12-213(I), it follows that any extension of time that this Court gave for filing the answer brief also applied to the brief in chief in the cross-appeal. The City proceeded correctly under the rule by filing both pleadings simultaneously, and we therefore consider the merits of its appeal.

{23} Second, Vega argues that the City's cross-appeal fails on grounds of preservation. She contends that the City failed to file a motion requesting attorney fees in the proceedings below and also failed to request a hearing on this matter. Our review of the record indicates otherwise. The City requested attorney fees in its response to Vega's motion for summary judgment and its countermotion for summary judgment. The City specifically stated that it "is entitled to recover its attorney[] fees under the Reimbursement Agreement" and asked the district court for recovery of fees in the body of its response to Vega's motion for summary judgment as well as in its countermotion. The City also attached a copy of the Reimbursement Agreement to its motion and quoted relevant language from the Reimbursement Agreement on the issue of recovery of attorney fees. In addition, within fifteen days after entry of the district court's letter decision, the City filed an affidavit requesting attorney fees and costs incurred during the proceedings in district court. In this affidavit, the City stated it was

16

entitled to fees under the language of the Reimbursement Agreement that provides that an employee "will pay all costs and expenses incurred by the . . . [p]olice [d]epartment and/or the City . . . , including attorneys fees and court costs" if judgment is entered against the employee. We conclude that the City adequately preserved this issue for purposes of appellate review.

**{24}** We now turn to consider the merits of the City's cross-appeal. New Mexico adheres to the American rule that, absent a contrary statute, court rule, or contractual provision, litigants are responsible for their own attorney fees. *N.M. Right to Choose/NARAL v. Johnson*, 1999-NMSC-028, ¶ 9, 127 N.M. 654, 986 P.2d 450. "Authority [for attorney fees] can be provided by agreement of the parties to a contract. The scope of that authority is defined by the parties in the contract, and a determination of what fees are authorized is a matter of contract interpretation." *Montoya v. Villa Linda Mall, Ltd.*, 1990-NMSC-053, ¶ 6, 110 N.M. 128, 793 P.2d 258 (citation omitted); *see NARAL*, 1999-NMSC-028, ¶ 9 (indicating that the American rule does not bar enforcement of a contractual provision for attorney fees). In this case, the City argues that it was contractually entitled to attorney fees and costs under the terms of the Reimbursement Agreement, which as we have noted above, provides that if judgment is entered against a former employee in any judicial proceeding to enforce the Reimbursement Agreement, the employee "will pay all costs and expenses

incurred by the . . . [p]olice [d]epartment and/or the City . . . , including attorney fees and court costs."

{25} We agree with the City that there was a contractual basis to support an award for attorney fees. However, the district court's letter decision and final order granting summary judgment in favor of the City did not mention the issue of attorney fees and costs at all. We assume that the lack of a formal ruling on the matter of fees and costs equated to a denial of the City's request. *See Stinson v. Berry*, 1997-NMCA-076, ¶ 8, 123 N.M. 482, 943 P.2d 129 ("Where there has been no formal expression concerning a motion, a ruling can be implied by entry of final judgment or by entry of an order inconsistent with the granting of the relief sought."). Because the district court's letter decision and final order failed to state a basis for the denial of the City's request for fees and costs, we are unable to evaluate the propriety of the denial or to assess the parties' arguments on appeal concerning the reasonableness of the amount of attorney fees requested by the City. We therefore conclude that remand is necessary for the district court to reconsider the issue of attorney fees and costs and to enter an order appropriately detailing its basis for granting or denying the City's request for fees and costs.

**CONCLUSION**

{26}     We affirm the district court's grant of summary judgment in favor of the City. We reverse and remand for further proceedings on the issue of attorney fees and costs.

{27}     **IT IS SO ORDERED.**


_____

**LINDA M. VANZI, Judge**

**WE CONCUR:**


_____

**RODERICK T. KENNEDY, Chief Judge**


_____

**CYNTHIA A. FRY, Judge**