This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**No. A-1-CA-38718**

**VONTELLA QUANSAH,**

Petitioner-Appellee,

v.

**STEPHEN A. QUANSAH,**

Respondent-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Gerard J. Lavelle, District Court Judge**

Law Offices of Lynda Latta, LLC
Lynda Latta
Albuquerque, NM

for Appellee

Moss George LLP
Jordon P. George
Robert H. Moss
Albuquerque, NM

Aragon Law Firm, P.C.
Robert Aragon
Albuquerque, NM

for Appellant

**DISPOSITIONAL ORDER**

**BACA, Judge.**

This matter is on appeal from the district court's order finding in favor of Vontella Quansah (Petitioner). Below, the district court found that (1) any overpayments of

monthly spousal support by Stephen Quansah (Respondent) during the relevant period are deemed gifts and do not offset any alleged underpayment of spousal support by Respondent and; (2) the real property at issue, although held in joint tenancy by the parties, is subject to Petitioner's contractual right to continue living at the residence during her lifetime. We note the following:

1.      Respondent argues that the district court erred in finding that Petitioner has a contractual right to continue residing at the property held in joint tenancy for her lifetime pursuant to the marital settlement agreement (MSA).

2.      Respondent also contends that the district court erred in finding that under the MSA, any monthly spousal support payment made by Respondent in excess of $5,000 is considered a gift to Petitioner and that Respondent is not entitled to any overpayment of spousal support.

3.      We review the district court's construction of contracts, such as a marriage settlement agreement, de novo. *See, e.g., Garcia v. Garcia*, 2010-NMCA-014, ¶ 17, 147 N.M. 652, 227 P.3d 621 (reviewing interpretation of a contract such as an MSA de novo); *Herrera v. Herrera*, 1999-NMCA-034, ¶ 9, 126 N.M. 705, 974 P.2d 675 ("All settlement agreements are contracts and therefore subject to contract law, including the statute of frauds.").

4.      "We view the contract as a harmonious whole, give meaning to every provision, and accord each part of the contract its significance in light of other provisions." *Benz v. Town Ctr. Land, LLC*, 2013-NMCA-111, ¶ 31, 314 P.3d 688 (alteration, internal quotation marks, and citation omitted). "The purpose, meaning and intent of the parties to a contract is to be deduced from the language employed by them; and where such language is not ambiguous, it is conclusive." *Rivera v. Am. Gen. Fin. Servs., Inc.*, 2011-NMSC-033, ¶ 27, 150 N.M. 398, 259 P.3d 803 (internal quotation marks and citation omitted). "It is black letter law that, absent an ambiguity, a court is bound to interpret and enforce a contract's clear language and cannot create a new agreement for the parties." *Montoya v. Villa Linda Mall, Ltd.,* 1990-NMSC-053, ¶ 8, 110 N.M. 128, 793 P.2d 258. "[A] contract is deemed ambiguous only if it is reasonably and fairly susceptible of different constructions. When the language of the contract clearly and unambiguously expresses the agreed-upon intent of the parties, this Court will give effect to such intent. . . . The mere fact that the parties are in disagreement on the construction to be given does not necessarily establish ambiguity." *Lenscrafters, Inc. v. Kehoe*, 2012-NMSC-020, ¶ 18, 282 P.3d 758 (internal quotation marks and citations omitted). "This Court will not rewrite a contract to create an agreement for the benefit of one of the parties that, in hindsight, would have been wiser." *Watson Truck & Supply Co. v. Males*, 1990-NMSC-105, ¶ 11, 111 N.M. 57, 801 P.2d 639.

5.      The parties were married in 1987 and they divorced in 2013. In the divorce, they divided their marital estate pursuant to the terms of an MSA.

6.     The MSA states that Petitioner "shall continue to reside at the [property]," but that the property "shall remain in joint tenancy with right of survivorship." Based on this language, Petitioner contends that Respondent waived his right to seek partition of the real property at issue.

7.     The MSA further provides that "Respondent shall pay to Petitioner periodic spousal support of at least $5,000 per month, beginning July 1, 2013 and payable on the first of each and every month thereafter. Respondent shall deposit the spousal support directly into Petitioner's bank account each and every month."

8.     We have carefully reviewed the briefs, applicable law, and arguments made by the parties. We have also reviewed the record, including the relevant portions of the MSA and the district court's order granted in favor of Petitioner.

9.     We conclude that the district court's order correctly applies the law to the facts of this case, interpreting the MSA, and correctly found in favor of Petitioner. In reaching this conclusion, we are convinced that specific language within the MSA, which is a contract negotiated and agreed to by the parties, supports the district court's conclusion. Specifically, the MSA plainly states that Petitioner "shall continue to reside" in the home, establishes no time frame by which this provision no longer remains in effect, and its intended permanence is reflected by the fact that the property is held in joint tenancy with right of survivorship, a provision triggered only by the death of either of the property owners. Regarding Respondent's monthly payments in excess of $5,000, the MSA does not state that excess amounts paid in one month could be used to offset future late payments. Instead, the MSA states simply that Respondent must pay "at least" that amount, suggesting that amounts in excess of that amount in a particular month were contemplated by the parties. While Respondent argues that the elements of a valid gift were not met, the district court's determination is supported by a straightforward reading of the contract's terms. We can discern no error in how the district court, based on the specific language of the MSA, ruled as to either of the points of appeal this case presents.

10.     We affirm the district court's order.

11.     **IT IS SO ORDERED.**

**GERALD E. BACA, Judge**

**WE CONCUR:**

**J. MILES HANISEE, Judge**

**KATHERINE A. WRAY, Judge**